UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUILDER'S BEST, INC.,

     Plaintiff,

v.                                  Case No. 1:03-cv-907

LOWE'S COMPANIES, INC.,             Hon. Wendell A. Miles

     Defendant.
_____/

OPINION AND ORDER
ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND ON PLAINTIFF'S MOTION TO STRIKE

     This action presents a dispute between the parties over use of the trademark "Builder's Best" in connection with the sales of their respective products.  The matter is currently before the court on the following motions: (1) a motion by plaintiff Builder's Best, Inc. ("BBI") for summary judgment (docket no. 65), (2) a motion by defendant Lowe's Companies, Inc. and by Lowe's Home Centers, Inc. (collectively "Lowe's" unless otherwise noted) for summary judgment (docket no. 67), and  (3) a motion by BBI to strike Lowe's summary judgment reply brief (docket no. 73).   All motions are opposed.

     For the reasons to follow, the court DENIES plaintiff BBI's motions, and GRANTS IN PART and DENIES IN PART Lowe's motion.

# I

BBI is a Michigan corporation.  BBI is in the business of manufacturing and selling dryer venting equipment for in-home use.  BBI markets its products under the trademark "BUILDER'S BEST."  In September, 1993, BBI obtained a United States trademark registration for the BUILDER'S BEST mark.  BBI's registration of the mark covers "ventilation duct components for buildings; namely, flexible polymeric duct, flexible metallic duct, elbows, vents and clamps." BBI first began using the "BUILDER'S BEST" mark in commerce in November, 1992.

Lowe's Companies, Inc. and its wholly owned subsidiary Lowe's Home Centers, Inc. are both North Carolina corporations.  The subsidiary owns and operates retail home improvement warehouses, including in Michigan.  The present dispute originated when, at some point, BBI learned that Lowe's was selling ceiling fans bearing the indicia "Builder's Best."

Certain correspondence between the parties followed this revelation.  (This correspondence is attached as Exhibit A to the Amended Complaint.)  On February 24, 2000, counsel for BBI wrote to Lowe's, accusing Lowe's of trademark infringement through use of the "BUILDER'S BEST" mark in connection with ceiling fans marketed by Lowe's as "HarborBreeze" Ceiling Fans.  BBI's counsel asked for Lowe's "assurances that this infringement will stop in the immediate future."  On March 14, 2000, Lowe's vice-president and assistant general counsel wrote back in response, seemingly denying infringement but promising to "review [BBI's] concerns" with Lowe's.

Lowe's subsequently referred BBI's accusations to outside counsel.  Additional correspondence ensued, the contents of which are not repeated here.  Importantly, for purposes of the present motion, Lowe's outside counsel wrote to counsel for BBI proposing a resolution of

the parties' differences.  Specifically, Lowe's counsel authored a letter to BBI's counsel dated

April 17, 2000.  The letter repeated Lowe's denial of infringement, but included the following

language:

> Nonetheless, in order to avoid the burden and expense of litigation, Lowe's is willing to discontinue its use of the 'Builder's Best' phrase with its HarborBreeze® ceiling fans, once it exhausts its present inventory, in return for a release from your client.  We are in the process of ascertaining from Lowe's the time frame in which we can expect the present inventory to be exhausted, and we will pass that information to you once we receive it.
>
> Please let us know whether this proposed resolution is acceptable to your client, so that we can begin the process of changing Lowe's labeling of its ceiling fans.

On July 18, 2000, BBI's counsel wrote back as follows:

> Thank you for your letter of July 12, 2000.  Our client is in general agreement with the procedure you propose.  It needs to know, of course, the approximate time frame which your client will require to exhaust its 'present inventory.'  . . .  I look forward to hearing from you on the time frame issue in the near future.

On September 26, 2000, Lowe's counsel again wrote to counsel for BBI, indicating that

Lowe's "expects depletion of its present inventory of the item at issue in or about January 2001."

BBI's counsel responded in a letter dated October 3, 2000, the entire contents of which are

detailed below:

> Thank you for your letter of September 26, 2000.  We can now formally accept on behalf of our client the offer set forth in your letter of July 12, 2000.  It is our understanding that your client will cease all use of the **BUILDER'S BEST** mark in or about January 2001.
> Thank you for your assistance in bringing this matter to an amicable resolution.

The October 3, 2000 letter apparently concluded the parties' correspondence, but did not resolve the parties' differences. Lowe's continued to use the Builder's Best mark, and in October, 2002, it acquired a United States trademark registration for use of the mark in connection with ceiling fans, light kits for attachment to fans comprised of electric lights for ceiling fans, and hardware and wiring for such products.[1] Believing that BBI and Lowe's had entered into a valid settlement agreement and that Lowe's had failed to comply with its obligations under that agreement, BBI filed suit against Lowe's in Michigan's Kent County Circuit Court, alleging breach of contract. Lowe's filed a notice of removal to this court, invoking diversity jurisdiction.

Several days after the removal, however, Lowe's also commenced its own action against BBI in the United States District Court for the Western District of North Carolina, seeking a declaratory judgment that no contract was ever formed between the parties and that Lowe's had not committed trademark infringement. That later-filed action was subsequently transferred to this court, where it was consolidated with the earlier-filed action. Ultimately, the later-filed case was dismissed without prejudice so that all of the issues could be resolved in one action.[2]

The currently controlling pleadings include both claims and counterclaims. For its part,

---

[1]Litex Industries, Inc. ("Litex"), a company which supplied Lowe's with its ceiling fans and light kits, was the original owner of the registration, which was issued in April, 2002. Lowe's acquired its rights by assignment from Litex.

[2]Although BBI's amended complaint names only Lowe's Companies, Inc. as a defendant, Lowe's Home Centers, Inc. has joined Lowe's Companies, Inc. in asserting a counterclaim against BBI. This anomaly is a product of the court's consolidation of all claims in one action. There can be no dispute that the relevant parties are participating in this action.

BBI has asserted a claim against Lowe's for breach of contract, accusing Lowe's of breaching an agreement to discontinue using the Builder's Best trademark.  As relief on this claim, BBI seeks both specific performance and damages.  BBI has also asserted claims against Lowe's for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125 and under Michigan common law.  As relief on these claims, BBI seeks damages, injunctive relief, and cancellation of Lowe's registration of the Builder's Best mark.  Lowe's counterclaims seek a declaratory judgment in its favor on the issues of contract and trademark infringement.

## II

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986).  In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356 (1986).   However, while inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."   Id., 475 U.S. at 586, 106 S.Ct. at 1356.   The applicable substantive law governing the issue determines what facts are relevant; only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are deemed "material." Anderson, 477 U.S. at 248.

<u>III</u>

In its motion, BBI seeks summary judgment against Lowe's on BBI's claim for breach of contract.  BBI's motion seeks a ruling in its favor solely on the issue of Lowe's liability for this claim, which would leave the issue of remedy to be decided.  In its motion, Lowe's likewise seeks a ruling in its favor on BBI's breach of contract claim.

At issue on this claim are the written communications between counsel and whether they may be determined to reach the status of a binding settlement agreement. Settlement agreements are a type of contract and are therefore governed by contract law.  Thus, '[w]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally.'"  Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992) (citations omitted).  Here, BBI has assumed that Michigan law applies to this aspect of the parties' dispute.  For its part, Lowe's disputes the applicability of Michigan law, but has responded to BBI's motion based on Michigan law and has cited Michigan law in its own

6

brief in support.[3]  Because no party has argued that there is any conflict between the respective

law they seek or intend to seek to have applied, the court concludes that application of Michigan

law is appropriate in addressing the parties' arguments, insofar as the parties have themselves

cited to Michigan law in their respective briefing.

Here, neither party disputes the authenticity of the letters in question, nor is there any

genuine dispute regarding whether the attorneys who authored the letters possessed authority --

or at least apparent authority -- to enter into a settlement on their clients' behalf.  Likewise, there

is no genuine dispute regarding whether any settlement agreement between the parties was

required to be reduced to a formal writing in order to be enforceable; it was not required.[4]

Therefore, the central dispute on BBI's breach of contract claim is whether the parties' letters

formed an enforceable agreement to settle their dispute.

Under Michigan law, a settlement agreement is a contract and is governed by legal

principles applicable to contracts.  See Michigan Mutual Ins. Co. v. Indiana Ins. Co., 247 Mich.

App. 480, 637 N.W.2d 232, 235 (2001).  The burden is on the plaintiff to show the existence of

the contract sought to be enforced.  Hammel v. Foor, 359 Mich. 392, 102 N.W.2d 196, 200

(1960).  Under usual contract principles, a party is bound by a settlement agreement absent a

_____

[3]Lowe's has stated that it "reserves the right to assert that either North Carolina law or
Texas law applies" in the event of a trial.  Memorandum in Opposition to Builder's Best, Inc's
Motion for Summary Judgment on the Issue of Liability for Alleged Breach of Contract at 2.
Lowe's has not, however, briefed the choice-of-law issue.

[4]There is no dispute that the parties did not execute any written documents of settlement.
Although Michigan requires settlement agreements entered during pending actions to be in
writing (if not made in open court), see M.C.R. 2.507(H), no party has argued that this
requirement applies where the agreement is entered before an action is filed – as is alleged here.

showing of mistake, fraud, or unconscionable advantage.  Plamondon v. Plamondon, 230 Mich. App. 54,  583 N.W.2d 245, 246 (1998).

"Before a contract can be completed, there must be offer and acceptance."  Eerdmans v. Maki, 226 Mich. App. 360, 573 N.W.2d 329, 332 (1997).  "Mere discussions and negotiation cannot be a substitute for the formal requirements of a contract."  Id.  "An offer is defined as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  Id. (citation omitted).  "Acceptance must be unambiguous and in strict conformance with the offer."  Id.

A valid contract requires a "meeting of the minds" on all the essential terms.  Kamalnath v. Mercy Memorial Hosp. Corp., 194 Mich. App. 543, 487 N.W.2d 499, 503 (1992).  "'Meeting of the minds' is a figure of speech for mutual assent."  Id. (citations omitted).  "It must be judged by an objective standard, looking to the express words of the parties and their visible acts."  Stark v. Kent Prod., Inc., 62 Mich. App. 546, 233 N.W.2d 643, 645 (1975).  Settlements should not be upset because of any hesitation or secret reservation on the part of either party.  Meyer v. Rosenbaum, 71 Mich. App. 388, 248 N.W.2d 558, 560 (1976).

Here, BBI has alleged that the parties' correspondence between February, 2000 and October , 2000 are evidence of a binding contract.  Of these, it is apparent that the only letter which could be viewed as an "offer" is Lowe's July 12, 2000 letter, in which Lowe's counsel suggested a "proposed resolution" in which Lowe's was "willing to discontinue its use of the 'Builder's Best' phrase with its HarborBreeze® ceiling fans, once it exhausts its present inventory, in return for a release from your client."  BBI 's July 18, 2000 response to this letter expressed "general agreement" with Lowe's proposed resolution, but was clearly not an

acceptance, insofar as it asked for additional information about the time frame for exhaustion of Lowe's inventory.  It was not until after BBI received Lowe's September 26, 2000 reply, indicating that Lowe's expected to deplete its inventory of "the item at issue in or about January 2001" that BBI  sent its October 3, 2000 letter stating that it had decided to "formally accept . . . the offer set forth in [Lowe's] letter of July 12, 2000."

However, BBI's October 3, 2000 letter contained an additional sentence expressing BBI's understanding that Lowe's "will cease ***all use*** of the **BUILDER'S BEST** mark" (emphasis supplied).  The "all use" language of BBI's  letter at a minimum created an ambiguity, insofar as Lowe's had offered only to cease use of the mark only with its HarborBreeze® ceiling fans. Such an ambiguity would prevent a contract from forming, because it indicated a lack of a meeting of the minds on the issue of precisely what Lowe's would cease or refrain from doing. Viewed in another manner, BBI's October 3, 2000 letter did not constitute an acceptance at all, because it was not in strict conformance with the material terms of  Lowe's July 12, 2000 offer. Either way, no contract was formed; there was no settlement agreement.[5]  Therefore, BBI is not entitled to summary judgment in its favor on the issue of Lowe's' liability for breach of the agreement, and Lowe's is entitled to summary judgment in its favor on this claim.

_____

[5]The parties likewise failed to agree on all material terms of a settlement because they did not discuss the terms of the release sought by Lowe's in its July 12, 2000 letter.  The details of a release are an inherently material term – if not the most material term – of a settlement agreement.  See Abbott Laboratories v. Alpha Therapeutic Corp., 164 F.3d 385, 388 (7th Cir. 1999) (parties reached no binding settlement agreement, where letter left issue of details of release for future negotiation); see also Higbee v. Sentry Ins. Co., 253 F.3d 994, 997 (7th Cir. 2001) ("we think many defendants would agree that the *most* material term in any settlement agreement is the release").

**IV**

In its motion, Lowe's also argues that it is entitled to summary judgment in its favor on BBI's claims for trademark infringement under the Lanham Act and under Michigan common law.  Although BBI's trademark claim is in the alternative, the court's conclusion that the parties had no valid settlement agreement requires consideration of this alternative claim.

Lowe's argues that BBI cannot succeed on its claim of trademark infringement.  To succeed on this claim, BBI must demonstrate that it has used the designation in question as a trademark, that Lowe's has used the designation as a trademark, and that there is a likelihood of confusion between the two trademarks.  Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods., 134 F.3d 749, 753-54 (6th Cir. 1998 ).  Here, although there is no dispute that both parties have used "Builder's Best" as trademarks, the parties strongly dispute whether there is a likelihood of confusion between the two trademarks.

Likelihood of confusion is the "touchstone of liability" for trademark infringement. Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997). Confusion "is a mixed question of fact and law."  Therma-Scan, Inc. v. Thermoscan, Inc., 295 F. 3d 623, 630 (6th Cir. 2002)  In assessing whether a likelihood of confusion exists in the context of trademark infringement, the Sixth Circuit has stated that district courts must consider the following factors:

(1) the strength of the senior mark;

(2) the relatedness of the goods or services;

(3) the similarity of the marks;

(4) the evidence of actual confusion;

(5) the marketing channels used;

(6) the likely degree of purchaser care;

(7) the intent of the defendant in selecting the mark; and

(8) the likelihood of expansion of the product lines.

Daddy's Junky Music, 109 F.3d at 280.  These factors do not imply mathematical precision; rather, they are simply a guide to help determine whether confusion is likely.  "The ultimate question remains whether relevant consumers are likely to believe that the products and services offered by the parties are affiliated in some way."  Id.  (quoting Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir. 1991)).[6]

Without relying the specific applicable factors, Lowe's simply argues that BBI has not provided evidence supporting a likelihood of confusion.  Here, however, there is no question that the wording of the marks is identical.  In addition, the goods are at least somewhat related insofar as they are hardware items which are likely to be used in a residence.  They also appear to be marketed through similar retail channels.

Lowe's argues that the products BBI accuses of infringing its mark have been sold at stores nationwide beginning as early as 1997.  Lowe's contends that despite its lengthy use of the mark, BBI has been able to point only to several instances where persons attempting to obtain information about ceiling fans were somehow able to contact BBI.  These instances , though

---

[6]Lowe's contends, and BBI has not disputed, that Michigan common law applies the same test for infringement as does federal law.  The court has therefore not analyzed these two claims separately.

11

limited, provide some evidence of actual confusion.  Although this opinion does not address specific factors which Lowe's has not contended support its position, the court concludes that there are genuine issues of material fact concerning a number of the relevant factors. Consequently, Lowe's is not entitled to summary judgment on BBI's trademark infringement claim.

Alternatively, Lowe's argues that BBI cannot establish that it has been damaged by the alleged infringement because BBI is unable to show that it lost any sales or revenue due to Lowe's use of the Builder's Best mark.  Lowe's also argues that BBI will not be entitled to any award of Lowe's profits on sales of products bearing the mark.  BBI disputes the latter argument. At this time, however, neither party has persuaded the court that this issue of remedy is ripe for a legal conclusion, and because the burden is on Lowe's to support its motion, the motion must be denied.

Finally, Lowe's also argues that BBI's request to cancel Lowe's later-acquired registration of the Builder's Best mark must be denied because Lowe's no longer owns the registration, having transferred it to another wholly owned subsidiary, who in turn assigned its rights to yet another wholly owned subsidiary.  Lowe's argues that because its subsidiary which is the current owner of the registration is not named as a party in this action, the registration cannot be cancelled.  BBI has not responded to this argument.

In the event that liability is found and a remedy must be determined, injunctive relief can likely be framed to address the actions of Lowe's subsidiaries.  <u>See</u> Fed.R.Civ.P. 65(d) (orders granting injunctive relief are "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with

them who receive actual notice of the order by personal service or otherwise"). However, the court concludes that this issue, like the issue of damages, is better left for future resolution, as appropriate.

<strong><u>V</u></strong>

BBI has filed a separate motion to strike a paragraph included in and an exhibit attached to Lowe's reply brief filed in support of Lowe's motion for summary judgment. BBI argues that this material is "new" and may not properly addressed for the first time in a reply brief. The paragraph and exhibit which BBI seeks to have stricken relate to Lowe's contention that it stopped using the Builder's Best mark with its HarborBreeze® ceiling fans before BBI filed suit against Lowe's. For its part, Lowe's responds that the supposedly "new" information relates to arguments which BBI made regarding specific performance and was a proper subject for reply.

The court denies BBI's motion to strike. If BBI wished to respond to information or arguments which it truly believed were new, the better course would have been to simply move for leave to file a surreply. Although motions to strike matters from pleadings are recognized by the rules, <u>see</u> Fed.R.Civ.P. 12(f), motions to strike portions of briefs are generally not favored.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, the court DENIES BBI's motion for summary judgment, DENIES BBI's motion to strike, GRANTS Lowe's motion for summary judgment on the issue of breach of contract, and DENIES Lowe's motion for summary judgment in all other respects.

So ordered this 30th day of November, 2005.

 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge

13